## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **KEY CONSTRUCTION, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 06-2395-KHV** |
| **STATE AUTO PROPERTY AND** | ) | |
| **CASUALTY INSURANCE COMPANY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Under the Declaratory Judgment Act, 28 U.S.C. § 2201, Key Construction, Inc. brings suit against defendants including H & W Plastering, Inc.  This matter comes before the Court on Plaintiff's Motion For Summary Judgment Against Defendant H & W Plastering, Inc. (Doc. #47) filed August 28, 2007.  For reasons stated below, the Court overrules the motion.

## Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Anderson, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d

737, 743 (10th Cir. 1991).  Once the moving party meets its burden, the burden shifts to the nonmoving

party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it

carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238,

1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87

(1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  The nonmoving

party may not rest on its pleadings but must set forth specific facts.  Applied Genetics, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing the motion for

summary judgment.  Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir.

1991).  Summary judgment may be granted if the nonmoving party's evidence is merely colorable or

is not significantly probative.  Anderson, 477 U.S. at 250-51.  "In a response to a motion for summary

judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape

summary judgment in the mere hope that something will turn up at trial."  Conaway v. Smith, 853 F.2d

789, 794 (10th Cir. 1988).

### Background

The following material facts are uncontroverted, deemed admitted or, where disputed, viewed

in the light most favorable to H & W, the nonmoving party.

Key Construction is a general contractor.  In February of 2002, it entered into a contract with

Mid-America V, LLC to build a three-story office building in Oklahoma City, Oklahoma.  In November

of 2002, Key Construction entered into a subcontract with H & W to "[p]rovide all labor, materials,

equipment, supervision, taxes, insurance, overhead and profit required to furnish and install all [exterior

insulation finish system ("EIFS")] in accordance with the plans and specifications [which the project

architect prepared]."  Exhibit B, attached to Plaintiff's Memorandum In Support Of Motion For

Summary Judgment Against Defendant H & W Plastering, Inc. ("Plaintiff's Memorandum") (Doc. #48) filed August 28, 2007 at 1. EIFS is a stucco-like exterior covering. The architect's specifications stated that the EIFS must comply with the guideline performance characteristics which the EIFS Industry Members Association had adopted for class PB EIFS. Exhibit B, attached to H & W Plastering, Inc.'s, Memorandum In Opposition To Plaintiff's Motion For Summary Judgment ("H & W's Response") (Doc. #56) filed September 27, 2007 at 1. The specifications further provided that "[t]he design for the EIFS is based on Senerflex Classic PB Wall System manufactured by Senergy, LLC. Subject to compliance with requirements, [H & W must] provide the named product or a comparable product." Id. at 2. Prior to installing the EIFS, H & W gave Key Construction and the project architect a proposal to use the Senerflex wall system. The project architect reviewed the proposal and approved it as being in accordance with the design concept and contract documents.

In August of 2005, Mid-America filed an arbitration demand against Key Construction which stated in pertinent part that "serious problems were or have been identified involving water intrusion into the Building." Exhibit C, attached to Plaintiff's Memorandum (Doc. #48) at 7. The preliminary report of architect Laurence A. Stubblefield concluded that the EIFS was constructed without (1) a drainage system, (2) a moisture barrier over the exterior face of the sheathing or (3) an impermeable vapor barrier on the interior side of the insulation. Exhibit D, attached to Plaintiff's Memorandum (Doc. #48) at 2-3. His report stated that the 2000 edition of the International Building Code required these components in EIFS. Id. Mid-America estimates that the cost to remove and replace the EIFS is $137,514.

The subcontract between Key Construction and H & W required H & W to procure insurance coverage, as follows:

5. <u>Insurance.</u>  Subcontractor shall maintain during the performance by Subcontractor of its portion of the Work, and if required, during the warranty period, insurance coverages with limits as follows, or such higher limits as may be required by the Contract Documents: * * *

    B.  Commercial General Liability Insurance providing limits for bodily injury, property damage and personal injury at $1,000,000 per occurrence and $2,000,000 aggregate.  The policy must name Contractor . . . as Additional Insured[] and shall include Premises-Operations, Broad Form Property Damage, Contractual Liability, Products and Completed Operations . . . and must be endorsed as Primary/Non-Contributory to any insurance of the Additional Insureds.

Exhibit B, attached to <u>Plaintiff's Memorandum</u> (Doc. #48) at 3.  The subcontract also required H & W to indemnify Key Construction, as follows:

7.  <u>Indemnification.</u>  To the full extent permitted by the law of the state in which the Project is located, Subcontractor shall indemnify Contractor . . . from all loss, cost, and expense (including attorney fees) and hold them harmless from all claims, demands, suits, and actions, including but not limited to the following: * * *

    C.  Alleged loss or injuries arising out of or resulting from or caused by the performance of the services of Subcontractor and caused or alleged to be caused by any act, error or omission of Subcontractor, or any person or organization for whom Subcontractor is legally liable, including but not limited to, loss or injuries arising out of or resulting from or caused by the partial or concurrent negligence of the . . . Contractor . . . .

The obligations of the Subcontractor under this Article shall not extend to the liability of the Architect, the Architect's consultants, agents or employees of any of them arising out of:

    (a)  The preparation or approval of map, drawings, opinions, reports, surveys, change orders, designs or specifications; or,

    (b) The giving of or the failure to give directions or instructions by the Architect, the Architect's consultants, and agents or employees of any of them provided such giving or failure to give is the primary cause of the injury or damage.

<u>Id.</u> at 5.  Under the terms of the subcontract, Key Construction has demanded that H & W participate proportionately in the costs which it has incurred in defending the claims of Mid-America.

4

In its motion for summary judgment, Key Construction asks the Court to declare as a matter of law that (1) H & W has breached the subcontract by not procuring insurance which names Key Construction as an additional insured; (2) H & W has a duty to defend and indemnify Key Construction pursuant to the terms of the subcontract; (3) H & W must pay its proportionate share of defense costs and expenses associated with Mid-America's arbitration demand; and (4) by failing and refusing to share in defense costs and expenses associated with Mid-America's arbitration demand, H & W has constructively refused to provide Key Construction a defense of the matter.

## Analysis

### I. Breach Of Contract

Key Construction seeks a declaration that H & W has breached the subcontract by not procuring commercial general liability insurance which names Key Construction as an additional insured. In this regard, the subcontract required H & W to maintain commercial general liability insurance which named Key Construction as additional insured and was endorsed as "Primary/Non-Contributory" to any insurance of Key Construction.

In response to the motion for summary judgment, H & W has produced an insurance policy which purports to name Key Construction as an additional insured and appears to satisfy its contractual obligation. See Exhibit D, attached to H & W's Response (Doc. #56). Key Construction does not address this insurance policy in its reply. Accordingly, the Court cannot declare as a matter of law that H & W has breached the subcontract by failing to procure commercial general liability insurance naming Key Construction as an additional insured. Plaintiff's motion for summary judgment on this ground is overruled.

5

## II.      Duty To Defend And Indemnify

Key Construction seeks a declaration that  H & W has  a duty to defend and indemnify it pursuant to the terms of the subcontract.  Under Oklahoma law, "[a]n indemnity against claims . . . embraces the costs of defense against such claims . . . ," and "[t]he person indemnifying is bound, on request of the person indemnified, to defend actions or proceedings brought against the latter in respect to the matters embraced by the indemnity . . . ."  Okla. Stat. tit. 15, § 472(3)-(4).  Because the duty to defend arises only with "respect to the matters embraced by the indemnity," the Court first considers the scope of the indemnity agreement.

Under Oklahoma law, indemnification agreements are generally valid.  Fretwell v. Protection Alarm Co., 764 P.2d 149, 153 (Okla. 1988).  Key Construction argues that its indemnification agreement with H & W is enforceable as a matter of law.  H & W responds that it installed the EIFS in accordance with the subcontract and the architect's specifications, and that it is not obligated to indemnify Key Construction against design defects.

Initially, the Court notes that Key Construction has conceded that H & W installed the EIFS in accordance with the subcontract and architect's specifications, which did not call for a drainage system, a moisture barrier or an impermeable vapor barrier.[1]  In light of this concession, the Court cannot find as a matter of law any negligence by H & W.  From the record, it appears that Mid-America's complaint of water intrusion is a product of the architect's specifications which omitted such features, rather than H & W's execution of the subcontract.

---

[1]       Key Construction argues that the International Building Code required EIFS to include a drainage system, a moisture barrier or an impermeable vapor barrier.  The subcontract and the architect's specifications, however, do not expressly incorporate the International Building Code or these features.

In the case of a defective project design, Oklahoma courts "shift the risk of loss from the least culpable party back up the contract chain to either the party who created the defective plans or the first party in the chain who contractually agreed to assume the risk." Miller v. Guy H. James Constr. Co., 653 P.2d 221, 224 (Okla. Civ. App. 1982). Under this rule, "a construction contractor who has followed plans and/or specifications furnished by the contractee, his architect or engineer, and which have proved to be defective or insufficient, will not be responsible for loss or damage . . . solely from the defective or insufficient plans or specifications, in the absence of any negligence on the contractor's part . . . ." Woods v. Amulco Prods., 235 P.2d 273, 276 (Okla. 1951). As a matter of law, because the Court cannot find negligence by H & W, liability for the alleged defects in the EIFS which are the subject of Mid-America's arbitration claim must rest with either the project architect (the party who created the defective plans) or Key Construction (the first party who contractually agreed to assume the risk for the defective plans).

Under Oklahoma law, one may indemnify another against that person's negligence or the negligence of third parties. Okla. Stat. tit. 15, § 421 ("Indemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person."). The Court must therefore determine whether H & W undertook to indemnify Key Construction against the negligence of the project architect and/or Key Construction itself. In analyzing the indemnity agreement, the Court applies basic rules of contract interpretation with the ultimate goal of ascertaining and giving effect to the parties' intent. Estate of King v. Wagoner County Bd. of County Comm'rs, 146 P.3d 833, 838 (Okla. Civ. App. 2006) (citing McAtee v. Wes-Lee Corp., 566 p.2d 442, 444 (Okla. 1977)) (as with other contracts, cardinal rule in interpretation of indemnity contract is to ascertain and give effect to intention of parties). Where the contract language is clear and free of ambiguity, the Court

interprets the agreement as a matter of law.  GEICO Gen. Ins. Co. v. Nw. Pac. Indem. Co., 115 P.3d 856,

858 (Okla. 2005).

On this record, the Court cannot specifically attribute fault for the allegedly defective plans to

either the project architect or Key Construction.  Assuming that the Court found negligence by the

project architect in drafting the defective plans, the indemnity agreement – by its express terms – does

not extend to the architect's liability in preparing specifications or giving (or failing to give)

instructions.  To the extent that Mid-America's arbitration claim arises from the architect's negligence

in drafting the specifications, that claim is not embraced by the indemnity agreement.

Assuming that the Court found negligence by Key Construction in adopting the defective plans,

the indemnity agreement covers "[a]lleged loss or injuries arising out of or resulting from or caused by

the performance of the services of [H & W] and caused or alleged to be caused by any act, error or

omission of [H & W] . . . including but not limited to, loss or injuries arising out of or resulting from

or caused by the partial or concurrent negligence of the . . . Contractor . . . ."   To the extent that the

indemnity agreement would protect Key Construction from its own negligence, the Court strictly

construes the agreement.  Fretwell, 764 P.2d at 153; see also Transpower Constructors, a Div. of

Harrison Int'l Corp. v. Grand River Dam Authority, 905 F.2d 1413, 1420 (10th Cir. 1990) (agreement

which purports to indemnify one against its own negligence must express parties' intent to exculpate

negligent indemnitee in unequivocally clear language).  Here, the indemnity agreement does not

expressly obligate H & W to indemnify Key Construction against the sole negligence of Key

Construction or others.  The specific limitation to losses caused by "the partial or concurrent negligence"

of others suggests that H & W must bear some fault in conjunction with other negligent parties before

its indemnity obligation is triggered.  To the extent that Mid-America's arbitration claim arises out of

negligence which is wholly attributable to others – including Key Construction – that claim is not embraced by the indemnity agreement.  In light of the contract language and the inability to find any negligence by H & W as a matter of law, the Court cannot declare as a matter of law that H & W's obligation to indemnify Key Construction is triggered by Mid-America's complaint of water intrusion.

Because the Court cannot declare as a matter of law that Mid-America's claim constitutes a matter embraced by the indemnity agreement, the Court also cannot declare as a matter of law that Key Construction's demand to share in defense costs associated with those claims triggers H & W's duty to defend under the indemnity agreement.  This conclusion further precludes any summary declaration that (1) H & W must pay its proportionate share of defense costs and expenses associated with Mid-America's arbitration demand, and (2) by failing and refusing to share in defense costs and expenses associated with Mid-America's arbitration demand, H & W has constructively refused to provide Key Construction a defense of the matter.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion For Summary Judgment Against Defendant H & W Plastering, Inc. (Doc. #47) filed August 28, 2007 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that no later than **January 16, 2008**, counsel contact courtroom deputy Linda South at (913) 551-6539, to advise whether they intend to proceed with the status conference now scheduled for January 22, 2008, and the jury trial now scheduled for February 5, 2008.

Dated this 10th day of January, 2008 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge