## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KEY CONSTRUCTION, INC.,                    )
                                           )
                    Plaintiff,             )
                                           )         CIVIL ACTION
v.                                         )
                                           )         No. 06-2395-KHV
STATE AUTO PROPERTY AND                    )
CASUALTY INSURANCE COMPANY, et al.,        )
                                           )
                    Defendants.            )
_____)

### MEMORANDUM AND ORDER

Under the Declaratory Judgment Act, 28 U.S.C. § 2201, Key Construction, Inc. ("Key Construction") brings suit against H&W Plastering, Inc. ("H&W") seeking indemnification pursuant to the parties' subcontractual agreement.[1]  The parties have submitted the matter for a court trial on stipulated facts and trial briefs.  After considering these materials, the Court makes the following findings of fact and conclusions of law, as required by Rule 52(a)(1) of the Federal Rules of Civil Procedure.

### Findings Of Fact

The parties have stipulated to the following facts:

Key Construction is a general contractor.  In February of 2002, it entered into a contract with Mid-America V, LLC ("Mid-America") to build a three-story office building in Oklahoma City, Oklahoma.  In November of 2002, Key Construction entered into a subcontract with H&W to "[p]rovide all labor, materials, equipment, supervision, taxes, insurance, overhead and profit required

---

[1]     On February 25, 2008, Key Construction voluntarily dismissed its claims against State Auto Property and Casualty Insurance Co. and Taylor Bros. Construction, Inc. under Rule 41(a)(1), Fed. R. Civ. P.  See Partial Stipulation Of Dismissal With Prejudice (Doc. #73).

to furnish and install all [exterior insulation finish system ("EIFS")] in accordance with the plans and specifications [which the project architect prepared]."  Exhibit A, attached to <u>Stipulated Facts For Trial</u> (Doc. #69) filed February 4, 2008 at 1.  The subcontract provided that all work would be done "in accordance with Local, State, Federal and OSHA codes and requirements."  <u>Id.</u>  Mid-America's architect prepared specifications which stated that the EIFS must comply with guideline performance characteristics which the EIFS Industry Members Association had adopted for class PB EIFS.  <u>See</u> Exhibit B, attached to <u>Stipulated Facts For Trial</u> (Doc. #69) at 1.  The specifications further provided that "[t]he design for the EIFS is based on Senerflex Classic PB Wall System manufactured by Senergy, LLC.  Subject to compliance with requirements, [H&W must] provide the named product or a comparable product."  <u>Id.</u> at 2.  The specifications did not require H&W to install a drainage system, a moisture barrier or an impermeable vapor barrier.  Prior to installing the EIFS, H&W gave Key Construction and the project architect a proposal to use the Senerflex wall system.  The project architect reviewed the proposal and approved it as being in accordance with the design concept and contract documents.

In August of 2005, Mid-America filed an arbitration demand against Key Construction which alleged that Key Construction was negligent in constructing the building.  Architect Laurence A. Stubblefield prepared a preliminary report in support of Mid-America's arbitration claim.  He concluded that the EIFS did not have (1) a drainage system, (2) a moisture barrier over the exterior face of the sheathing or (3) an impermeable vapor barrier on the interior side of the insulation. Exhibit E, attached to <u>Stipulated Facts For Trial</u> (Doc. #69) at 2-3.  He also stated that the 2000 edition of the International Building Code required these components in EIFS.  <u>Id.</u>  The cost to remove and replace the EIFS is $137,514.

The subcontract between Key Construction and H&W required H&W to indemnify Key Construction, as follows:

> 7.  Indemnification.  To the full extent permitted by the law of the state in which the Project is located, Subcontractor shall indemnify Contractor . . . from all loss, cost, and expense (including attorney fees) and hold them harmless from all claims, demands, suits, and actions, including but not limited to the following: * * *
>
>> C.  Alleged loss or injuries arising out of or resulting from or caused by the performance of the services of Subcontractor and caused or alleged to be caused by any act, error or omission of Subcontractor, or any person or organization for whom Subcontractor is legally liable, including but not limited to, loss or injuries arising out of or resulting from or caused by the partial or concurrent negligence of the Owner, Contractor, Architect, or other party indemnified hereunder.
>
> The obligations of the Subcontractor under this Article shall not extend to the liability of the Architect, the Architect's consultants, agents or employees of any of them arising out of:
>
>> (a)  The preparation or approval of map, drawings, opinions, reports, surveys, change orders, designs or specifications; or,
>>
>> (b) The giving of or the failure to give directions or instructions by the Architect, the Architect's consultants, and agents or employees of any of them provided such giving or failure to give is the primary cause of the injury or damage.

Exhibit A, attached to Stipulated Facts For Trial (Doc. #69) at 5.

## Conclusions Of Law

As noted above, Mid-America has filed an arbitration demand which alleges that Key Construction was negligent in constructing the building.  Key Construction asks the Court to declare as a matter of law that with respect to the arbitration proceeding, H&W has a duty to indemnify it against this allegation that it was negligent.  The Declaratory Judgment Act permits the Court to issue declaratory judgment as follows:

In a case of actual controversy within its jurisdiction, . . . any court of the United

-3-

States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).  The Court maintains discretion whether to grant declaratory relief.  <u>Kunkel v. Cont'l Cas. Co.</u>, 866 F.2d 1269, 1273 (10th Cir. 1989) (Declaratory Judgment Act does not impose duty on trial court to make declaration of rights).

## I.      Choice Of Law

The parties dispute whether the Court should apply Kansas or Oklahoma law.  The subcontract generally states that it "shall be governed by the laws of The State of Kansas."  Exhibit A, attached to <u>Stipulated Facts For Trial</u> (Doc. #69) at 6.  On the other hand, H&W's contractual obligation to indemnify Key Construction exists "[t]o the full extent permitted by the law of the state in which the Project is located," <u>i.e.</u> Oklahoma.  <u>Id.</u> at 5.

As a federal district court sitting in diversity, the Court applies the choice of law rules of the state in which it is located.  <u>Koch v. Koch Indus., Inc.</u>, 2 F. Supp.2d 1416, 1420 (D. Kan. 1998) (citing <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941)).  Under Kansas choice of law rules, the Court must enforce a valid contractual choice of law provision.  <u>Gen. Elec. Capital Corp. v. Dodson Aviation, Inc.</u>, 286 F. Supp.2d 1307, 1313 (D. Kan. 2003).  Kansas courts recognize the principle of freedom of contract and generally permit parties to choose the law applicable to their agreement.  <u>Brenner v. Oppenheimer & Co.</u>, 273 Kan. 525, 538, 44 P.3d 364, 374 (2002).

The parties agree that the subcontract is not ambiguous.  Regardless whether the Court applies Kansas or Oklahoma law, it must give effect to the unambiguous contract as written.  <u>See</u> <u>Whitehorse v. Johnson</u>, 156 P.3d 41, 47 (Okla. 2007) (unambiguous contract accepted in plain and ordinary sense); <u>Kan. Pub. Employees Retirement Sys. v. Russell</u>, 269 Kan. 228, 236, 5 P.3d 525, 530 (2000)

(unambiguous instrument leaves no room for construction).  Therefore, on the express language of the subcontract, the Court will apply Oklahoma law to determine the duty to indemnify.  Although Kansas law generally governs the subcontract, Oklahoma law governs the extent of H&W's obligation to indemnify Key Construction, which is the issue on which Key Construction seeks declaratory judgment.

## II.    Duty To Indemnify

Key Construction seeks a declaration that H&W has a duty to indemnify it against Mid-America's claim that it (Key Construction) was negligent in constructing the building.  Oklahoma courts generally recognize the validity of indemnity agreements.  Fretwell v. Prot. Alarm Co., 764 P.2d 149, 153 (Okla. 1988).  Under Oklahoma law, "[t]he person indemnifying is bound, on request of the person indemnified, to defend actions or proceedings brought against the latter in respect to the matters embraced by the indemnity . . . ."  Okla. Stat. tit. 15, § 427(4).

Because H&W is obligated to indemnify Key Construction only as to matters embraced by the indemnity agreement, the Court first considers the scope of the indemnity agreement.  Under Oklahoma law, the Court strictly construes an indemnity agreement which attempts to protect one against its own negligence.  Fretwell, 764 P.2d at 153; see also Transpower Constructors, a Div. of Harrison Int'l Corp. v. Grand River Dam Auth., 905 F.2d 1413, 1420 (10th Cir. 1990) (agreement which purports to indemnify one against its own negligence must express parties' intent to exculpate negligent indemnitee in unequivocally clear language).  Here, the indemnity agreement covers alleged losses or injuries arising out of H&W's performance of the subcontract, including losses or injuries allegedly resulting from the partial or concurrent negligence of Key Construction.  It does not extend to losses or injuries which are alleged to result from the *sole* negligence of Key

Construction or other parties.  Further, it expressly excepts losses or injuries which the architect causes through its "preparation or approval of map, drawings, opinions, reports, surveys, change orders, designs or specifications."[2]  Because the indemnity agreement does not extend to the sole negligence of Key Construction or others, or to the liability of the architect, H&W's indemnity obligation must arise from some allegation that it was negligent in performing the subcontract, and that its negligence was the sole, partial or concurrent cause of injury to Mid-America.[3]

Key Construction argues that Mid-America has complained of negligent performance by H&W, which triggered H&W's indemnity obligation.  The record does not support this argument.  Mid-America's arbitration demand alleges that Key Construction was negligent.  It generally complains of water intrusion into the building, but does not identify any specific defect or allege that any party other than Key Construction is responsible for the damage.  Indeed, the arbitration demand does not mention H&W or the EIFS.  Stubblefield's preliminary report – which purportedly outlines Mid-America's claims – states only that the EIFS did not have a drainage system, a moisture barrier or a vapor barrier which the 2000 edition of the International Building Code required.  Key Construction argues that these observations implicate H&W's installation of the EIFS.  Again, however, Stubblefield's report does not mention H&W or attribute to H&W defects in the installation of the EIFS.  The report simply indicates that certain features were not included in the EIFS – nothing

_____

[2]       Plaintiff argues that this provision applies only to a demand for indemnity by the architect.  The Court disagrees.  The exception for liability of the architect applies broadly to "[t]he obligations of the Subcontractor under this Article," which include the obligation to indemnify Key Construction as the general contractor.

[3]       On the facts of this case, only the Owner (Mid-America), the general contractor (Key Construction), the subcontractor (H&W) and the architect conceivably bear some responsibility for the alleged defects.

more and nothing less.  Furthermore, the record contains no evidence that H&W was bound to follow the 2000 edition of the International Building Code,[4] or that it deviated from the subcontract or the architect's specifications in installing the EIFS.  Stubblefield's report does not indicate that H&W was required to install a drainage system, a moisture barrier or a vapor barrier in the EIFS.  In fact, the parties agree that the Senerflex wall system which H&W installed conformed to the subcontract and the architect's specifications – neither of which required those features.

Under Oklahoma law, the liability for defective plans and specifications falls on either the architect or the first party to adopt the plans and specifications, not the subcontractor who innocently relies on the plans and specifications.  Miller v. Guy H. James Constr. Co., 653 P.2d 221, 224 (Okla. Civ. App. 1982) (Oklahoma courts "shift the risk of loss from the least culpable party back up the contract chain to either the party who created the defective plans or the first party in the chain who contractually agreed to assume the risk.").  To the extent that liability is traced back to the architect, the indemnity agreement expressly relieves H&W from indemnifying Key Construction against any resulting loss or injury.  If Key Construction is liable (as the party which adopted the defective specifications), it appears that such liability would rest with Key Construction alone and would not constitute partial or concurrent negligence with H&W which would trigger the indemnity agreement.

For purposes of this action, the Court need not attribute negligence to any party; it need only determine whether Mid-America has alleged negligence by H&W.  Without some evidence that H&W should have installed a drainage system, moisture barrier and vapor barrier in the EIFS, the Court cannot find that Mid-America has alleged loss for which H&W is solely, partially or

---

[4]    Plaintiff argues that the Oklahoma City ordinance adopted the 2003 edition of the International Building Code, but offers no evidence that this edition was effective when H&W entered into or performed the subcontract.

concurrently responsible.  To the extent that Mid-America may be deemed to allege loss which arises

from acts, errors or omissions of H&W which are partial or concurrent with negligence of the

architect, H&W's duty to indemnify is expressly excluded from the indemnity agreement because

such allegation is related to the preparation and approval of the designs or specifications, or the

architect's giving or failure to give directions and instructions.  The Court cannot find that Mid-

America's arbitration claim implicates H&W, however, because (1) it expressly implicates Key

Construction and no other parties, and (2) nothing in the record necessarily dispels the inference that

Key Construction and/or the architect are solely responsible for Mid-America's loss or injury.

The Court cannot go beyond the allegations of Mid-America's arbitration demand, to further

examine the applicability of the indemnity provision, without investigating the negligence of the

respective parties.  The parties have asked the Court not to do so because those issues are the subject

of the arbitration proceeding.   The parties agree that if H&W is found to be negligent in the

arbitration action, it must indemnify Key Construction.  H&W represents that it does not dispute its

legal obligation to do so under that scenario.  In the fullness of time, the arbitrator can therefore

decide which party (if any) was at fault.  Until that time, H&W's duties under the indemnity

agreement cannot be determined as a matter of law.

As noted above, the Court has broad discretion to grant declaratory relief.  See Executive Risk

Indem. Inc. v. Sprint Corp., 282 F. Supp.2d 1196, 1202 (D. Kan. 2003) (courts have unique and

substantial discretion under Declaratory Judgment Act, which does not confer absolute right upon

litigant).  Even if the Court found some validity in plaintiff's claim, the fact that the arbitrator will

ultimately decide questions of negligence – thereby resolving the indemnity question – justifies the

Court's declination of declaratory relief.  See State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 983

(10th Cir. 1994) (existence of more effective alternative remedy factor in declining declaratory relief); see also St. Paul Fire & Marine Ins. Co. v. Runyon, 53 F.3d 1167, 1169-70 (10th Cir. 1995) (court does not abuse discretion by declining to issue declaratory relief where immediate question could be decided in alternate proceeding); Kunkel, 866 F.2d at 1276 (federal court generally should not entertain declaratory judgment action if same fact-dependent issues likely to be decided in another pending proceeding).  Accordingly, the Court declines to order the declaratory relief which Key Construction seeks in this case.[5]

IT IS THEREFORE ORDERED that the Clerk of the Court enter judgment in favor of H&W Plastering, Inc.

Dated this 5th day of March, 2008 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge

---

[5]    Key Construction complains that deferral of an indemnity determination nullifies the benefit of indemnification by forcing it to seek reimbursement for its defense costs on the back end of the arbitration proceeding.  This argument assumes that Key Construction is necessarily entitled to indemnification, without regard to the outcome of the arbitration proceeding.  For reasons stated above, the Court does not agree with this premise.

Under Oklahoma law, "[a]n indemnity against claims . . . embraces the costs of defense against such claims . . . ."  Okla. Stat. tit. 15, § 472(3).  Because Key Construction cannot demonstrate that H&W is obligated to indemnify it against Mid-America's arbitration action, the Court cannot find that H&W is required to share in Key Construction's defense costs associated with such action.